| | |
|---|---|
| IN RE KIMBALL HILL, INC.,<br><br>　　　　Debtor.<br>_____<br><br>FIDELITY & DEPOSIT COMPANY OF MARYLAND, ZURICH AMERICAN INSURANCE COMPANY and their subsidiaries and affiliates,<br><br>　　　　Appellants,<br><br>　　v.<br><br>U.S. BANK NATIONAL ASSOCIATION, as the PLAN ADMINISTRATOR for the KHI POST-CONSUMMATION TRUST and the LIQUIDATION TRUST ADMINISTRATOR for the KHI LIQUIDATION TRUST,<br><br>　　　　Appellee. | No. 13 C 07146<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

The appellants in this bankruptcy appeal are creditors Fidelity & Deposit Company of Maryland (F&D) and Zurich American Insurance Company (along with its subsidiaries, collectively referred to as Zurich). The creditors appeal from an order of the bankruptcy court that in effect ratified the substantive consolidation of a number of their claims against Debtor Kimball Hill, Inc. and its affiliates

(collectively Kimball Hill).[1] For the reasons discussed below, the bankruptcy court's order is affirmed.

## I. Background

Founded in Illinois in 1969, Kimball Hill was a residential construction business with operations across the United States by the time that it filed for Chapter 11 bankruptcy protection on April 23, 2008. Dkt. No. 1, Voluntary Petition; Dkt. No. 926, Disclosure Stmt. at 16.[2] F&D and Zurich, two of Kimball Hill's creditors, timely filed ten and thirty proofs of claim (respectively) against a number of Kimball Hill entities. *See* R. 17, Exh. A-6, Table of Proofs of Claim. On December 2, 2008, Kimball Hill submitted a Joint Plan for proceeding under Chapter 11. Dkt. No. 814.

The Plan, as further explained by an amended Disclosure Statement filed on January 21, 2009, outlined a settlement agreement whereby two trusts would be established to liquidate Kimball Hill's assets and distribute the proceeds to Kimball Hill's creditors at a fixed rate. Disclosure Stmt. at 36-39. The bankruptcy court approved the Disclosure Statement, along with the proposed solicitation procedures for obtaining approval of the Plan. *See* Dkt. No. 925, Order Granting Mot. to Approve. After being served with the Plan, Disclosure Statement, and court-approved solicitation packages, F&D voted to accept the Plan and Zurich abstained.

---

[1]The Court has subject matter jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

[2]For ease of reference, for documents first filed during the bankruptcy case, the Court cites to the bankruptcy court's docket entry number ("Dkt. [number]") from *In re Kimball Hill, Inc.*, No. 08-B-10095 (Bankr. N.D. Ill.), followed by a description of the document in question. Citations to this Court's docket are noted as "R. [docket entry number]."

*See* Dkt. No. 981, Aff. of Service; Dkt. No. 1091, Supp. Aff. of Romelia A. Edwards Re: Tabulation of Votes on Joint Plan.

On March 12, 2009, the bankruptcy court entered its findings of fact and conclusions of law confirming the Plan, which became effective later that month. Dkt. No. 1118, Confirmation Order. The Confirmation Order specified that the Plan Administrator, which is the appellee in this appeal, had the sole authority to file any objections to claims or interests and to settle any disputed claims. *Id*. ¶ 34. Using that authority, on April 10, 2013, the Administrator filed its 22nd Omnibus Objection, seeking to disallow all but one each of F&D and Zurich's claims as duplicative because the Plan provided for only a single recovery on a liability asserted against multiple Kimball Hill entities. Dkt. 3394, 22nd Omnibus Objection ¶¶ 24-25. F&D and Zurich opposed the Objection, contending that all of their claims should be preserved because each of the debtor-entities was jointly and severally liable. Dkt. No. 3421, F&D and Zurich's Resp. to Objection ¶¶ 6, 9.

The bankruptcy court held a hearing on July 10, 2013, at which it expressed skepticism for why it should allow the claims, explaining that F&D and Zurich's position appeared to be a "very, very late objection" to substantive consolidation that the "parties had an opportunity to raise" four years before, during the ratification of the Plan. R. 6, July 10, 2013 Hr'g Tr. at 8. On August 7, the bankruptcy court made its ruling orally, holding that "the plan does, in fact, call for a consolidation for distribution purposes." R. 12, Aug. 7, 2013 Hr'g Tr. at 20. The bankruptcy court entered an order sustaining the Objection on August 30, 2013,

Dkt. No. 3537, and F&D and Zurich's timely appeal to this Court followed. R. 1, Appeal.

## II. Standard of Review

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). "A bankruptcy court's interpretation of a plan it confirmed is subject to full deference as an interpretation of its own order and may be overturned only if the record shows an abuse of discretion in the interpretation." *In re Airadigm Commc'ns, Inc.*, 547 F.3d 763, 768 (7th Cir. 2008) (citing *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994)).

## III. Discussion

### A. Law of Substantive Consolidation

Substantive consolidation typically involves "pooling the assets of, and claims against, [various debtor] entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988). The purpose of substantive consolidation is "to [e]nsure the equitable treatment of all creditors." *Eastgroup Properties v. S. Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991) (citation omitted). It also "avoid[s] the expense or difficulty of sorting out the debtor's records

to determine the separate assets and liabilities of each affiliated entity." *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987).

There is no explicit basis for substantive consolidation in either the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure; rather, it springs from a bankruptcy court's equity powers as reflected in 11 U.S.C. § 105, a catch-all provision that grants the court all "necessary or appropriate" authority in carrying out the purposes of the Bankruptcy Code. *See, e.g.*, *F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992). As a result, the doctrine's development through case law has been marked by a variety of approaches, as "the bankruptcy court has the power to modify substantive consolidation to meet the specific needs of the case." *In re Standard Brands Paint Co.*, 154 B.R. 563, 567-70 (Bankr. C.D. Cal. 1993) (outlining in detail the development of case law in different circuits).

### B. Review of Bankruptcy Court Order

In this appeal, F&D and Zurich contend that the bankruptcy court's order sustaining the Administrator's Objection, thereby confirming substantive consolidation of their claims, was a mistake because (1) the Plan did not expressly provide for substantive consolidation, and (2) the bankruptcy court did not provide for "clear notice to the adversely affected creditors."[3] R. 10, Appellants' Br. at 9-10. The Court addresses these two separate points, neither of which is convincing, in turn.

### 1. Express Provision

---

[3] An order of the bankruptcy court that has the effect of substantively consolidating various parties' claims is considered final and appealable. *See In re Bonham*, 229 F.3d 750, 762 (9th Cir. 2000).

5

The creditors' first contention presents a pure question of law, making it subject to *de novo* review. *In re Miss. Valley Livestock, Inc.*, 745 F.3d at 302. According to F&D and Zurich, "substantive consolidation cannot be deemed effective from a cobbling together of words and phrases," and instead "must be clearly and unambiguously set forth in the Plan or ordered after a trial or hearing." Appellants' Br. at 12. In effect, they argue that substantive consolidation of their claims is invalid because no provision in the Plan *explicitly* stated that consolidation was part of the Plan.

The problem with this argument is that F&D and Zurich never identify any applicable law that actually sets forth such a requirement. Instead, F&D and Zurich fixate on the well-established presumption against the use of substantive consolidation in most cases. *Id.* at 12-15 (citing *In re Raymond Prof'l Grp., Inc.*, 438 B.R. 130, 138 (Bankr. N.D. Ill. 2010); *In re Doctors Hosp. of Hyde Park, Inc.*, 308 B.R. 311, 322 (Bankr. N.D. Ill. 2004); *In re World Access, Inc.*, 301 B.R. 217 (Bankr. N.D. Ill. 2003)). That the doctrine should be applied only in narrow circumstances and with careful forethought is uncontested. As the Second Circuit has noted, "[b]ecause of the dangers in forcing creditors of one debtor to share on a parity with creditors of a less solvent debtor … substantive consolidation is no mere instrument of procedural convenience … but a measure vitally affecting substantive rights, to be used sparingly." *In re Augie*, 860 F.2d at 518 (internal quotation marks and citations omitted); *see also In re Owens Corning*, 419 F.3d 195, 208-09 (3d Cir. 2005).

But it does *not* necessarily follow that merely because substantive consolidation should be used cautiously, it therefore can *only* be applied where an express written provision in a proposed bankruptcy plan has provided for it. F&D and Zurich point to no legal authority holding that an otherwise properly reviewed and vetted reorganization plan must have the magic words "this is substantive consolidation" in order to be operative. Nor has the Court found any in its independent research. The bankruptcy court determined that this is a case where substantive consolidation, caution and caveats notwithstanding, is appropriate. Rather than address the merits of that determination, F&D and Zurich seek to escape its effects by asking for an unprecedented legal rule.

Nor does it make sense to establish a set-in-stone, explicit-statement requirement that one would expect if substantive consolidation were grounded in the Bankruptcy Code or Rules. Instead, the equitable origins of the doctrine have unsurprisingly resulted in its application in various contexts and via various procedural forms, including through motions for consolidation made directly to the court and court approval of privately negotiated settlements. *See, e.g.*, *In re Owens Corning*, 419 F.3d at 195 (granting motion to consolidate debtors' assets and liabilities brought in anticipation of plan of reorganization); *In re Auto-Train Corp., Inc.*, 810 F.2d at 276 (stating that a bankruptcy court could in theory use its equitable powers to give consolidation retroactive effect through *nunc pro tunc* order if warranted); *In re Winn-Dixie Stores, Inc.*, 356 B.R. 239, 251 (Bankr. M.D. Fla. 2006) (adopting a Substantive Consolidation Compromise over objections of some

creditors). Indeed, given this flexibility, the Court sees no reason to impute now, as a bright-line rule, the formalistic express-provision requirement F&D and Zurich wish to read into the doctrine.

## 2. Clear Notice

Having rejected the argument that, as a matter of law, a bankruptcy plan must include an explicit, specific set of words warning about substantive consolidation, the Court considers the creditors' second argument (that the bankruptcy court did not provide clear notice to the adversely affected creditors). Notwithstanding the absence of an explicit-warning requirement, it is true that substantive consolidation cannot be implemented without giving the creditor notice of consolidation and an adequate opportunity to challenge it. F&D and Zurich assert that they never received clear notice that their claims would be substantively consolidated. The Court's review of this contention is for abuse of discretion, because the issue turns on an assessment of the bankruptcy court's interpretation of the plan that the bankruptcy court itself approved. *Airadigm Commc'ns, Inc.*, 547 F.3d at 768. Under that standard, the bankruptcy court's order sustaining the Administrator's objection was appropriate.

Where a reorganization plan has been adopted, "[t]he law is well settled that a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." *Adair v. Sherman*, 230 F.3d 890, 895 (7th Cir. 2000) (quoting *In re Ross*, 162 B.R. 785, 789 (Bankr. N.D. Ill. 1993)). "When the order of confirmation is entered, it binds the debtor and all creditors to the terms of

the plan of reorganization." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 891 F.2d 159, 161 (7th Cir. 1989) (citation omitted). If "a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010) (specifying that party failing to oppose plan at appropriate time may not obtain post-judgment relief).

Here, the bankruptcy court found that both F&D and Zurich received notice and opportunity to object to the Plan, but that neither did so, with F&D actually voting in favor. Aug. 7, 2013 Hr'g Tr. at 17. F&D and Zurich argue in response that they were hoodwinked by the Plan's "indirect and unclear" language—the Plan, they assert, was a "sandbagging," "carefully crafted to mislead" them from perceiving that substantive consolidation would take place. R. 17, Appellants' Reply Br. at 12, 14. The bankruptcy court, although acknowledging that "additional clarity" would have been welcome in the Plan about its substantive-consolidation effect, disagreed: "if you take the plan in its totality, and you take the disclosure statement that discloses the terms of the plan, … [it] absolutely calls for consolidation for distribution purposes."[4] Aug. 7, 2013 Hr'g Tr. at 18-19.

The record supports the bankruptcy court's conclusion, and at the very least there was no abuse of discretion. The Plan itself, although it never uses the term "substantive consolidation," outlines elements that suggest this effect, including

---

[4]The bankruptcy court had previously found that the same Plan provides for the effect of substantive consolidation, in the context of certain other claims against Kimball Hill brought by different creditors. *See In re Kimball Hill, Inc.,* 480 B.R. 894, 905 (Bankr. N.D. Ill. 2012).

9

eliminating intercompany claims and setting up pro rata distributions to all creditors from common trusts. Dkt. No. 814, Joint Plan at 1, 21. The Plan refers specifically to the Disclosure Statement, *id.* at iv, which in turn states:

> The settlement on which the Plan is premised provides for distributions to creditors on a *consolidated* basis. Consistent with the settlement, *any* Claim against a Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors are deemed *one* right to a distribution under the Plan.

Disclosure Stmt. at 6 (emphases added).[5] F&D and Zurich protest that surely their claims were never understood to receive this treatment, because they "are not guarantee claims" (rather, they are for "primary" and not secondary liability) and they are not premised on joint *or* several liability (rather, they assert joint *and* several liability). Appellants' Br. at 17-18. This attempt at parsing is misplaced. On its face, the Disclosure Statement says that the Plan is premised on the consolidated distribution of *any* claim against the Debtors—*in addition to* any guarantee thereof and any joint or several liability, not only of those claims that have those features.

F&D and Zurich also object that the Disclosure Statement's "veiled reference" to consolidation was insufficient by itself to give notice, and that the Plan itself needed to speak to it. Appellants' Br. at 19. The express-provision rule that F&D and Zurich seek to apply to the Plan has already been discounted as groundless. What's more, as the Administrator points out, R. 14, Appellee's Br. at 25,

---

[5]In addition to the Plan and the Disclosure Statement, the Administrator points out that F&D and Zurich were further educated about the effects of the Plan through the Hede Declaration [Dkt. No. 1079] and the Debtors' lengthy memorandum of law [Dkt. No. 1078] in support of confirmation.

10

reorganization plans and related documents like disclosure statements are normally "read together to ascertain the meaning of Plan provisions." *In re WorldCom, Inc.*, 352 B.R. 369, 377 (Bankr. S.D.N.Y. 2006) ("For purposes of interpretation, 'all documents which were confirmed together to form the contract' are added to the Plan itself.") (citation omitted). *See also In re Texas Wyoming Drilling, Inc.,* 422 B.R. 612, 630 (Bankr. N.D. Tex. 2010) ("Looking at a plan and disclosure statement together is in line with the general contract principle that documents forming part of the same transaction are to be read together.") (citations omitted). F&D and Zurich may believe that the Plan itself should have been clearer, but it is accepted that an explanatory document like the disclosure statement "can be helpful when read in conjunction with [the Plan] to determine whether creditors received reasonable notice of the terms of the Plan so long as there is no conflict with the Plan or any other confirmation document." *In re Futter Lumber Corp.*, No. 09-73291-478, 2011 WL 5417094, at *7 (Bankr. E.D.N.Y. Nov. 8, 2011). And F&D and Zurich do not allege that the Disclosure Statement was actually in conflict with the Plan.

Because the pre-confirmation materials were therefore adequate and F&D and Zurich (two sophisticated creditors) failed to object when they had the opportunity, the bankruptcy court did not abuse its discretion in upholding the substantive consolidation of their claims. These two creditors' efforts to preserve their various individual claims amount to an impermissible collateral attack on a settlement Plan that was confirmed over five years ago. The bankruptcy court acted

appropriately in not entertaining such an attack and the doubt and uncertainty it would throw on the ongoing liquidation of Kimball Hill's assets. "After the orders of confirmation and consummation have been entered, finality becomes paramount." *Matter of Chicago*, 891 F.2d at 161.

## IV. Conclusion

For the reasons stated above, the bankruptcy court's order sustaining the Administrator's 22nd Omnibus Objection is affirmed.

ENTERED:

                                                  s/Edmond E. Chang
                                      Honorable Edmond E. Chang
                                      United States District Judge

DATE: November 4, 2014